**CITY OF COLUMBUS, Appellee,**

v.

**ZIEGLER, Appellant.**

[Cite as *Columbus v. Ziegler* (1992), 78 Ohio App.3d 819.]

Court of Appeals of Ohio,
Franklin County.

No. 91AP–1058.

Decided Sept. 30, 1992.

*Ronald J. O'Brien,* City Attorney, *Marcee McCreary,* City Prosecutor, and *Brenda J. Keltner,* Assistant City Prosecutor, for appellee.

*Dale R. Yurovich,* for appellant.

ARCHER E. REILLY, Judge.

A Franklin County Municipal Court jury found defendant-appellant, Roy O. Ziegler ("appellant"), guilty of operating a vehicle while under the influence of alcohol in violation of Columbus City Code ("C.C.") 2133.01(a) and of operating a vehicle within the city with a concentration of ten hundredths of one gram or more by weight of alcohol per two hundred ten liters of his breath in violation of C.C. 2133.01(b)(2). The trial judge found appellant guilty of driving left of center in violation of C.C. 2131.01, a minor misdemeanor. The court sentenced appellant on the impaired-driving conviction, C.C. 2133.01(a). The court sentenced appellant to one hundred eighty days. One hundred seventy of these days were suspended and appellant was put on probation for one year. The court fined appellant $750 plus court costs, took away his driving privileges, and ordered appellant to perform eighty hours of community service.

Appellant appealed his convictions to this court. Subsequently, appellant voluntarily dismissed his appeal of his conviction for driving left of center and this court dismissed appellant's appeal of his *per se* violation for lack of a final appealable order. Consequently, the only remaining conviction on appeal before this court is the OMVI conviction, C.C. 2133.01(a).

Appellant has asserted the following three assignments of error:

"1. The Trial Court erred when it overruled defendant's Motion to Suppress/Motion in Limine. The B.A.C. Verifier test result was inaccurate and was not proven to have been obtained in substantial compliance with the Ohio Department of Health Regulations.

"2. The Trial Court's sentence of the defendant was unlawful in that the statutory factors contained in R.C. 2929.22 and R.C. 2929.12(C) were not considered; the sentence was based upon inappropriate factors, was violative of the United States and Ohio Constitutions and was imposed capriciously with bias and prejudice.

"3. The jury's findings of 'guilty' on both the 'impaired' and the 'per se' aspect of the driving while under the influence charge were against the manifest weight of the evidence."

In the early morning of April 11, 1991, Columbus police officer Love was on duty in a marked car and driving westbound on Livingston. In his rearview mirror, Love observed appellant, who was also driving westbound on Livingston, go left of center four to five times. Near the intersection of Livingston and Roosevelt, Love pulled over in the right lane and stopped to permit appellant to get ahead of him. Appellant also pulled over right behind Love, temporarily stopped, then jerked his car back into the left lane and turned north (right) onto Roosevelt. Love followed him and stopped him. Appellant staggered out of his car and stood by it. When Love walked up to appellant and asked for his driver's license, he detected a strong odor of alcohol about appellant. Appellant could not recite the alphabet past approximately the letter "F," nor could he walk heel to toe. Love arrested appellant and took him to police headquarters.

Love arrested appellant around 12:40 a.m. Appellant agreed to take a BAC Verifier test, which was conducted around 1:43 a.m. Police Officer Wilson administered the test. Wilson recalled appellant clearing his throat before taking the test and on cross-examination acknowledged that it could have been a belch.

On cross-examination, Love did not recall hearing appellant belch while being transported to police headquarters. Nor did Love recall hearing appellant belch any other time before he took the BAC Verifier test. Love did acknowledge that appellant could have belched without his knowledge.

Appellant testified on his behalf at trial. Appellant went to a Clippers game the afternoon of April 10, 1991. After the game, he went to dinner and then to Oggy's Tavern. Appellant said that because he was not feeling well, the only drinks he had all day were two bourbon and waters at Oggy's. Appellant claimed that he did complete the alphabet, but explained that he says the

alphabet quickly and runs many of the letters together. He denied being asked to perform any other tests including the heel-to-toe test.

Appellant testified that he suffers from a stomach acid problem which causes him to belch more than the average person. During the drive to the station, appellant's stomach was queasy and he was belching, but he tried to be quiet. He also testified that he was belching in the machine room where the BAC Verifier was kept and that one belch caused Love to look over at him approximately five to ten minutes before he took the test. Appellant stated that because he was nervous, he belched frequently and that he blew into the BAC Verifier machine only a few seconds after his last belch.

Alfred Staubus testified for the defense as an expert on the effects of belching on BAC Verifier tests. Staubus testified that belches can cause elevated results if the belch brings up fumes or liquid from the stomach into the mouth. According to Staubus, when only one BAC Verifier test result is obtained, the extent of a belch's influence on the result cannot be mathematically determined. Staubus stated that there would presumptively be a significant difference between the effect of a belch which involved little or no stomach fluid and that of a belch which involved more stomach fluid.

In his first assignment of error, appellant asserts that the trial court erred when it ruled that the BAC Verifier test results were admissible. Specifically, appellant argues that belches constitute an oral intake, and that the Ohio Department of Health ("ODH") requirement that the subject be observed for twenty minutes prior to testing to prevent oral intake of any material had been violated. To support his contention that the oral intake prohibition had been violated, appellant needed to establish either that his belches involved sufficient gases and/or stomach fluids to make it probable that they would skew the BAC results or that as a matter of law a belch affects the BAC Verifier results.

The testimony of appellant's expert did not establish that as a matter of law a belch is a prohibited oral intake. The expert was never asked to define "belch" as he used it. The expert testified that some belches would affect a test result more than others. Moreover, the sole basis of the expert's knowledge about the effects of belching on BAC Verifier tests was one incident when a test subject had consumed three beers in thirty-three minutes and twenty minutes later had begun to supply breath samples at regular intervals. After consistently measuring results of .049 grams of alcohol per two hundred ten liters of breath, one result measured .095 grams of alcohol per two hundred ten liters of breath because the subject had belched right before providing the sample. This is not sufficient evidence to support a claim

that as a matter of law a belch is going to significantly skew a BAC Verifier test result.

■ Nor does the expert's testimony support finding that appellant's belching caused the test result to be over the .1 grams by weight of alcohol per two hundred ten liters of breath standard. Appellant did not present detailed testimony on the nature of his belches other than that he "was belching." He did not say if they consisted solely of gas or if they also involved stomach fluids. Furthermore, while appellant was in the presence of one, sometimes two policemen, for approximately one hour before taking the test, only one officer recalled one possible belch. We do not find that appellant established that his alleged belches were likely to violate the oral intake prohibition.

■ Presuming for the sake of argument that appellant's belches were of such a nature as to be a prohibited oral intake, appellant still did not establish prejudice. He was convicted of the impaired-driving charge, which is not based on the BAC Verifier test result, although the result is admissible to prove impaired operation of a vehicle. There was testimony that appellant drove left of center, staggered when he exited his car, and could not recite the alphabet or walk heel to toe. Additionally, his BAC Verifier test result was .234 grams or more by weight of alcohol per two hundred ten liters of breath, more than double the amount needed to establish a *per se* violation of C.C. 2133.01(a).

■ Appellee has argued that appellant should not be able to raise this matter on appeal because he failed to preserve the issue for appeal by objecting to the test results at trial. Appellee's argument is based upon the theory that appellant did not question whether or not an administrative or statutory requirement had been violated. Consequently, *Defiance v. Kretz* (1991), 60 Ohio St.3d 1, 573 N.E.2d 32, does not apply, and appellant's motion was a motion *in limine* rather than a motion to suppress.

While we have ruled that appellant failed to prove, as a matter of law, or in this instance, that his belches violated the oral intake prohibition, we did not rule that a belch could never constitute a prohibited oral intake and, therefore, violate a statutory requirement. Further, it was the appellee who took the initiative and asserted that pursuant to *Defiance*, a motion to suppress was the proper procedure to attack the admissibility of the test result in this case. Appellee should not be able to turn around and use this procedural argument to deprive appellant of the opportunity to have this assignment of error decided on the merits.

Appellant's first assignment of error is overruled.

■ In his second assignment of error, appellant asserts that the trial court abused its discretion when it sentenced him. Specifically, he contends the court failed to consider the statutory factors set forth in R.C. 2929.22 and 2929.12(C) when sentencing him and, instead, based the sentence on improper factors—the prior bond forfeiture and the BAC Verifier test result.

R.C. 2929.22 addresses the imposition of sentences for misdemeanors. Paragraph A identifies considerations for determining whether to impose imprisonment, a fine, or both:

" * * * [T]he court shall consider the risk that the offender will commit another offense and the need for protecting the public therefrom, the nature and circumstances of the offense, the history, character, and condition of the offender and his need for correctional or rehabilitative treatment, and the ability and resources of the offender and the nature of the burden that payment of a fine will impose on him."

R.C. 2929.22(C) requires the court to consider criteria listed in R.C. 2929.12 against imposing imprisonment for a misdemeanor. R.C. 2929.12(C) provides the following criteria for consideration:

"(1) The offense neither caused nor threatened serious physical harm to persons or property, or the offender did not contemplate that it would do so;

"(2) The offense was the result of circumstances unlikely to recur;

"(3) The victim of the offense induced or facilitated it;

"(4) There are substantial grounds tending to excuse or justify the offense, though failing to establish a defense;

"(5) The offender acted under strong provocation;

"(6) The offender has no history of prior delinquency or criminal activity, or has led a law-abiding life for a substantial time before commission of the present offense;

"(7) The offender is likely to respond quickly to correctional or rehabilitative treatment."

■ Sentencing is generally within the sound discretion of the trial court and will not be disturbed upon review as long as the sentence is within the confines of the valid statute. *Toledo v. Reasonover* (1965), 5 Ohio St.2d 22, 34 O.O.2d 13, 213 N.E.2d 179. However, failure to consider statutory considerations amounts to an abuse of discretion. *Columbus v. Jones* (1987), 39 Ohio App.3d 87, 89, 529 N.E.2d 947, 949, quoting *Cleveland v. Egeland* (1986), 26 Ohio App.3d 83, 26 OBR 258, 497 N.E.2d 1383. When the record is silent, it is presumed that the trial court correctly considered the appropriate sentencing

criteria. *State v. O'Dell* (1989), 45 Ohio St.3d 140, 543 N.E.2d 1220; *Jones, supra,* 39 Ohio App.3d at 89, 529 N.E.2d at 949.

The record indicates that before sentencing appellant, the court asked about mitigation. Appellant's attorney requested the court to ignore the 1981 bond forfeiture because of the length of time that had elapsed and because it was not a conviction. The attorney also pointed out that appellant was gainfully employed and a member of the business community. Appellant declined the court's offer to speak on his own behalf. The court asked whether appellant had liability insurance and was informed that he did.

The court then sentenced appellant. After the sentence was announced, appellant's attorney asked for justification of the ten-day sentence since it was appellant's first offense. The court replied that it was definitely his second offense. When appellant's attorney stated that the ordinance, C.C. 2133.99, referred to convictions, the court replied that it was entitled to sentence appellant up to six months and that appellant's BAC test had been "very high."

Appellant's prior bond forfeiture stemming from his 1981 OMVI charge was not a conviction and cannot be used to enhance his sentence or to change the degree of his convicted offense. However, that was not done in this case. While the court may have mistakenly considered the bond forfeiture to be a conviction, there was no prejudical error. The court did initially base the portion of the sentence resulting in ten days incarceration solely on its incorrect belief that appellant had a prior conviction. However, the sentence fell within the statutory guidelines, there were no significant mitigating factors, and the court did not exceed its discretion based upon the high BAC test results, and adhered to the original sentence after it learned that the ten-day mandatory imprisonment under R.C. 4511.99(A)(2) did not apply.

Furthermore, appellant claims that the court also should not have based his sentence upon the BAC Verifier test result because of his expert's testimony which challenged the accuracy of the result and was not controverted at trial. We disagree. The evidence was not sufficiently conclusive to prevent the trial court and jury from viewing the test result as a fairly accurate indicator of the amount of alcohol in appellant's system when he was arrested.

■ As to whether the court abused its discretion by not considering the statutory considerations, the evidence indicates that the court did consider the statutory considerations. The court expressly asked appellant's attorney about mitigation. Appellant had no mitigating motivation for operating a vehicle while under the influence of alcohol.

Appellant's second assignment of error is overruled.

In his final assignment of error, appellant asserts that the jury's findings of guilty on both the *per se* and the impaired charges were against the manifest weight of the evidence. When addressing a manifest weight of the evidence argument, a court reviews " * * * the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury erred and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. * * *" *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d 717, 720. Further, when addressing a manifest weight of the evidence issue, questions of weight and credibility are primarily for the trier of fact. *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212. The situation when a case will merit reversal on manifest weight grounds is rare. *Martin, supra; State v. Abi–Sarkis* (1988), 41 Ohio App.3d 333, 535 N.E.2d 745; *State v. Banks* (1992), 78 Ohio App.3d 206, 604 N.E.2d 219.

■ To support his manifest weight argument on the *per se* conviction, appellant notes that he was allegedly belching during the twenty-minute observation period and points to his expert's testimony that belching would result in an elevated BAC test result. As indicated above, the expert's testimony did not establish that any belch would significantly elevate a BAC test result. In any event, the jury may have found the expert's testimony persuasive, and still concluded that an accurate BAC test result would have been greater than .1. We do not find that the jury's conviction of appellant on the *per se* charge was against the manifest weight of the evidence.

■ Concerning the impaired-driving conviction, appellant relies on the fact that he has credit card receipts to substantiate his claim that he only drank two bourbon and waters all night. These credit card receipts do not eliminate the possibility that appellant had drinks other than those accounted for by the receipts. Assuming appellant only had the two drinks, it would not have been against the manifest weight of the evidence for the jury to determine that these two drinks impaired appellant's ability to operate a vehicle sufficiently to warrant convicting him for impaired driving. The jury's finding of guilty on the impaired driving charge was not against the manifest of the evidence.

Appellant's third assignment of error is overruled.

Appellant's three assignments of error are overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

WHITESIDE and PETREE, JJ., concur.

ARCHER E. REILLY, J., retired, of the Tenth Appellate District, was assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.